UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at ASHLAND**

| | |
|---|---|
| DONALD RAY LAW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 0:13-cv-50-JMH |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL ) | **AND ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [D.E. 10, 11] on Plaintiff's appeal of the Commissioner's denial of his application for Social Security Disability Insurance and Supplemental Security Insurance. [Tr. 66-83].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1.   An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1]   These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 71]. Under step two, the ALJ found that Plaintiff's medically determinable

impairments of degenerative disc disease of the lumbar spine, pain disorder, and shoulder arthritis were "severe" as defined by the agency's regulations. [Tr. 72]; 20 CFR §§ 404.1520(c), 416.920(c). The ALJ further found that Plaintiff's impairments of Hepatitis C, Gastroesophageal Reflux Disease, and right sided diverticulitis were "non-severe" impairments. [Tr. 72].

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 72-74]. After further review of the entire record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform less than the full range of light work, but that he could frequently climb ramps or stairs, occasionally climb ladders, ropes, or scaffolds, occasionally stoop, kneel, crouch, or crawl, and frequently reach bilaterally. [Tr. 74]. Additionally, the ALJ found that Plaintiff should avoid concentrated exposure to vibration, the operational controls of moving machinery, and unprotected heights. [Tr. 74]. Furthermore, Plaintiff would be limited to simple, routine tasks with only occasional changes in the work setting, with no interaction with the public and only occasional interaction with co-workers, including no tandem tasks. [Tr. 74].

The ALJ found that Plaintiff was unable to perform any of his past relevant work. [Tr. 78]. However, there were jobs in the relevant national economy that Plaintiff could perform. [Tr. 78]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 79].

In this appeal, Plaintiff argues that the ALJ failed to consider all of Plaintiffs severe, non-severe, exertional, and non-exertional impairments and that the ALJ failed to accurately describe the claimant when presenting the hypothetical questions to the vocational expert.

## II. Standard of Review

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

4

reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

## III. Factual and Procedural Background

Plaintiff is currently forty-nine years of age [Tr. 13], with a GED. [Tr. 16]. Plaintiff has past work experience as a forklift operator, laborer, manufacturer, and welder's assistant. [Tr. 185]. Plaintiff was previously awarded disability benefits for a closed period of disability from August 30, 2004 to May 8, 2006. [Tr. 69]. Plaintiff has now filed for a period of disability and disability insurance benefits under Title II, and for supplemental security income (SSI) under Title XVI, alleging disability beginning on September 3, 2008. [Tr. 69]. The claims were denied both initially and upon reconsideration. [Tr. 69]. Plaintiff requested a hearing with the ALJ, which took place on May 16, 2012. [Tr. 69]. The ALJ issued an unfavorable decision denying disability insurance benefits and SSI on May 24, 2012. [Tr. 79].

According to Plaintiff, the pain in his lower back, neck, and shoulder is constant. [Tr. 228]. Plaintiff fell off a moving truck in 1990, sustaining injuries to his head, neck, and back. [Tr. 501]. Plaintiff treats the pain with Lortab and Valium, as well as alternating ice and heat. [Tr. 229; 23-24]. Plaintiff also suffers from diverticulitis, which he treats with over-the-counter medications, such as Imodium. [Tr. 24]. Additionally,

5

Plaintiff complains of problems concentrating and remembering [Tr. 20, 31], picking up small items due to numbness in his fingers [Tr. 26], and chest pains [Tr. 30-31]. Plaintiff also takes amitriptyline, ibuprofen, nitroglycerin, and Effexor. [Tr. 27, 186].

An MRI of Plaintiff on February 28, 2008 revealed a disc bulge at the L4-L5 level, which causes a moderate degree of central canal stenosis, and minimal disc bulging at the L5-S1 level, which causes a mild degree of central canal stenosis. [Tr. 273]. After this diagnosis, Plaintiff received physical therapy for spinal stenosis of the lumbar region. [Tr. 260]. Plaintiff made recurring trips to St. Claire Regional Medical Center for various problems. On March 16, 2008, he complained of back pain [Tr. 275]; on April 11, 2008 he was diagnosed with myocardial infraction and chronic back pain [Tr. 286]; on October 13, 2008 Plaintiff was treated for right-sided diverticulosis, internal hemorrhoids, and abdominal pain [Tr. 326]; on October 27, 2008 he was treated for back pain [Tr. 360]; on November 3, 2008 he was treated for back pain [Tr. 365]; on September 1, 2009 he was treated for chest pain, chronic sinusitis, chronic low back pain, and anxiety [Tr. 374]; on December 11, 2009 he was treated for headaches [Tr. 431]; and on March 3, 2010 he was treated for degenerative disc disease [Tr. 445].

Plaintiff also made frequent trips to the Family Medicine Center of St. Claire Medical where he was treated for such problems as chest pain, hyperlipidemia, chronic pain syndrome [Tr. 449], degenerative disc disease of the lumbar region, degeneration in the cervical disc [Tr. 452] and depression. [Tr. 458]. Plaintiff was treated by the Olive Hill Family Care Center for chronic back pain, hyperlipidemia, MRSA, Gastroesophageal reflux disease, and anxiety. [Tr. 552].

Plaintiff was analyzed by Dr. Naushad Haziq for a Department of Disability Determination on June 2, 2010. [Tr. 501]. Dr. Haziq found that there was mild pain, tenderness and movements of the cervical spine. [Tr. 506]. The right shoulder exhibited pain and tenderness and moderate limitation of movements. *Id.* Examination of the lumbar region revealed pain and tenderness and mild limitation of movement. *Id.* Dr. Haziq also found that Plaintiff's left leg was three centimeters longer than the right. *Id.* Dr. Haziq analyzed Plaintiff a second time on August 10, 2010. [Tr. 510]. At this time, Dr. Haziq noted that Plaintiff's gait appeared slow, cautious, and antalgic. [Tr. 512]. There was pain and tenderness in the cervical spine, but no limitation in range of motion. [Tr. 513]. There was pain, tenderness, and crepitations in the shoulders, with moderate limitations in the range of motion, the right being worse than the left. [Tr. 513]. Plaintiff also exhibited

7

pain and tenderness in the lumbar back with mild limitation of movements. [Tr. 514]. Based on this physical assessment, Dr. Haziq found that Plaintiff had possible degenerative disc disease and possible arthritis in his shoulders. [Tr. 514].

Plaintiff saw Dr. Geraldo C. Lima on February 28, 2011 for a disability evaluation. [Tr. 518]. Dr. Lima found that Plaintiff was able to understand instructions, but would have trouble recalling them. [Tr. 521]. Further, he believed Plaintiff could perform tasks in a normal amount of time and would work well with supervisors and co-workers. *Id.* However, his ability to manage stressors in the workplace was reduced. *Id.*

Dr. James C. Owen performed a disability examination on February 15, 2012. [Tr. 575]. Dr. Owen found that Plaintiff had persistent low back pain with known old compression fractures and radicular nonverifiable symptomatology, persistent neck pain with diminished range of motion and nonverifiable radicular symptomatology, and numbness of the feet. [Tr. 577]. Based on this assessment, Dr. Owen found that Plaintiff would have moderate-to-severe difficulty lifting, handling, and carrying objects. *Id.*

Vocational expert Gina Baldwin testified at the hearing before the ALJ. [Tr. 33]. Ms. Baldwin testified that a person with an RFC equivalent to the ALJ's RFC finding for Plaintiff

8

would not be able to return to Plaintiff's past work. [Tr. 38]. However, Ms. Baldwin determined that there were jobs in the relevant economy that someone with that RFC assessment could perform. [Tr. 38-39]. Ms. Baldwin found there would be no jobs in the national economy if an individual was limited to light-level work, standing and walking less than two hours in an eight-hour day, sitting about two hours in an eight-hour day, could never climb, could occasionally balance, scoop, crouch, kneel, and crawl, could only use his right hand, and should avoid heights and moving machinery. [Tr. 39-40].

Plaintiff is able to drive [Tr. 14], walk fifteen minutes at a time [Tr. 25], can sit twenty minutes at a time [Tr. 26], watches television [Tr. 29], is able to perform his own personal hygiene [Tr. 29], no longer shops on his own [Tr. 231, 234], and is able to perform some household chores, although it takes a long time. [Tr. 231].

**IV. Analysis**

**I. The ALJ did not err by failing to discuss obesity and depression as impairments of Plaintiff.**

Plaintiff contends that the ALJ failed to consider all of the impairments of Plaintiff because the ALJ did not discuss obesity or depression in her opinion denying benefits. When faced with a similar argument in the past, this Court stated: "There is no diagnosis of obesity in the record, nor has any

medical source, treating or otherwise, suggested functional limitation as a result of obesity. Therefore, the Court finds that the ALJ did not err in this regard." *Land v. Astrue*, No. 12-1-HRW, 2013 WL 1145888 at *5 (E.D. Ky. Feb. 22, 2013); *see also Jones v. Comm'r of Soc. Sec.*, No. 11-14430, 2012 WL 6757248, at *8 (E.D. Mich. Dec. 17, 2012) (citations omitted) ("[T]he ALJ was not obligated to discuss Plaintiff's obesity because neither Plaintiff nor the medical evidence suggested that her obesity was a significant impairment.").

This is the first time Plaintiff has claimed that he is disabled due to obesity. This was not an issue addressed at the hearing [Tr. 6-42], and the Court can find no mention of obesity being a disabling impairment in the medical records. Furthermore, Plaintiff has cited to nothing in the record where he asserts he is obese or where someone has indicated he cannot perform a job function due to obesity.

Plaintiff does point to several instances in the record where his weight was mentioned in medical examinations. Plaintiff was noted as "well developed" and "obese" on at least four different occasions. [Tr. 336, 455, 460, 469]. Plaintiff is also correct in his assertion that Plaintiff's weight was over 250 pounds at several medical visits. *E.g.*, [Tr. 450]. However, similar arguments have been rejected by the Sixth Circuit. In *Cranfield v. Commissioner of Social Security*, the plaintiff

> assert[ed] that because her doctors' reports indicated her obesity, the ALJ was required to consider it as a possible impairment. The problem with this argument is the ALJ never received evidence suggesting [plaintiff] or her doctors regarded her weight as an impairment. In fact, [plaintiff] provided no evidence that obesity affected her ability to work.

79 F. App'x 852, 857-58 (6th Cir. 2003).

Similarly, in this case, it was never suggested that obesity was an impairment that kept Plaintiff from working. Rather, Plaintiff now contends the ALJ should have considered obesity an impairment merely because he stated his weight was 250 pounds when he testified and because similar weights were recorded in his medical history. This is the same argument rejected by the Sixth Circuit. Accordingly, the ALJ did not err by failing to discuss Plaintiff's obesity.

Plaintiff's assertion that the ALJ failed to even discuss his claimed impairment of depression is simply incorrect. The ALJ explicitly found that "[t]he severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.04." [Tr. 73]. Listing 12.04 applies to "affective disorders" which are defined as "a disturbance of mood . . . generally involv[ing] either depression or elation." 20 CFR pt. 404, subpt. P, app. 1. The ALJ properly conducted an analysis of Plaintiff's medical record in assessing whether paragraph B or C of 20 CFR Part 404 Appendix 1 § 12.04 were met. *See id.* § 12.04 ("The required level of severity for these disorders is met when

the requirements in both A and B are satisfied, or when the requirements of C are satisfied.").

Thus, as Plaintiff challenges the ALJ's determination as to his depression, the Court must determine if the ALJ's determination that Plaintiff's depression was non-severe is supported by substantial evidence. *See Long v. Apfel*, 1 F. App'x 326, 333 (6th Cir. 2001) ("[W]e hold that substantial evidence supports the ALJ's finding that Long does not suffer a severe impairment within the meaning of the Social Security regulations."). To find that Plaintiff's depression met the requirements of Paragraph B, the ALJ was required to find that Plaintiff's depression met two of the following: marked restriction of activities of daily living; marked difficulties in social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *See* 20 CFR pt. 404, subpt. P, app. 1 § 12.04(B). A marked limitation is one that is "more than moderate but less than extreme." *Id.* § 12.00(C). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

The ALJ's finding that Plaintiff did not have a marked restriction of daily living is supported by substantial evidence. Plaintiff stated that he was able to do some household chores, albeit at a slow pace [Tr. 231], he is able to attend to most of his own personal needs [Tr. 234, 239], makes his own meals [Tr. 234, 240], can go shopping with assistance [Tr. 234, 241], and is able to drive a car. [Tr. 241]. Therefore, the record presents "relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's conclusion that Plaintiff suffered a mild limitation in performing daily activities. *Cutlip*, 25 F.3d at 286 (citations omitted).

The ALJ's determination that Plaintiff did not have marked difficulties maintaining social functioning is supported by substantial evidence. Plaintiff claims that he "hangs out and talks" two to three times a week. [Tr. 242]. Dr. Geraldo Lima, a state-appointed examining psychiatrist found that Plaintiff was "socially appropriate and is likely to do well in social contexts." [Tr. 521]. Dr. Ed Ross, a state agency psychological consultant, found only mild limitations for Plaintiff in "maintaining social functioning." [Tr. 532]. Therefore, the record provides substantial evidence for the ALJ's finding that Plaintiff did not have marked difficulties in maintaining social functioning.

The ALJ's finding that Plaintiff has moderate difficulties with regard to concentration, persistence, or pace is supported by substantial evidence. Dr. Ross found that Plaintiff's difficulties in maintaining concentration, persistence, or pace presented moderate limitations. [Tr. 532]. Dr. Lima found that Plaintiff was "able to concentrate well and is likely to be able to complete tasks in a normal amount of time." [Tr. 520]. Plaintiff reported that sometimes he cannot remember what happened "15 minutes ago" [Tr. 235], puts his medication out so he remembers to take them [Tr. 240], and sometimes needs to be reminded to shave and shower. [Tr. 240]. Based upon this evidence, a reasonable mind might accept that Plaintiff had moderate limitations with regard to concentration, persistence, or pace.

The ALJ's determination that Plaintiff had no episodes of decompensation of extended duration is supported by substantial evidence. "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 CFR pt. 404, subpt. P, app. 1 § 12.00(C)(4). Plaintiff points to no episodes of decompensation in the record, and the Court can find no evidence of an episode of decompensation.

14

Furthermore, Dr. Ross found that Plaintiff had no episodes of decompensation, each of extended duration. [Tr. 532]. Thus, the record supports, by substantial evidence, the ALJ's finding that Plaintiff did not meet any of the criteria within Paragraph B. *See* 20 CFR pt. 405, subpt. P, app. 1 § 12.04(B).

Alternatively, the ALJ could have found that Plaintiff had a:

> [m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 CFR pt. 404, subpt. P, app. 1 § 12.04(C). The record simply fails to provide evidence that Plaintiff can meet these conditions.

While Plaintiff made frequent trips to the emergency room, and to consult with physicians, as is documented above, the record does not contain a medically documented history of depression of at least 2 years duration. In fact, on March 16, 2008, at an emergency room visit, Plaintiff was characterized as "no . . . depression." [Tr. 279]. As discussed previously, the

record does not support a finding that Plaintiff had repeated episodes of decompensation, each of extended duration. Likewise, there is no evidence that a change in Plaintiff's environment would cause Plaintiff to decompensate due to depression. Rather, Dr. Ed Ross, a state agency psychologist found that Plaintiff could "adapt to gradual change and appreciate work hazards on the job described." [Tr. 538]. Plaintiff has not shown a need for a highly supportive living environment as he testified at the hearing that "I actually don't have a home right now. I [sic] kind of homeless, and I just skip around right now. . . . Right now, I'm with my ex-wife and my daughter." [Tr 13]. Therefore, there is evidence that negates a finding that Plaintiff requires a highly supportive living arrangement and the ALJ's determination that Paragraph C does not apply is supported by substantial evidence. *See* 20 CFR pt. 404, subpt. P, app. 1 § 12.04(C).

**II. The ALJ accurately described the Plaintiff when posing hypothetical questions to the vocational expert.**

Plaintiff argues that the case should be remanded because the ALJ failed to present the Vocational Expert with an accurate hypothetical question. Plaintiff bases this argument on the fact that the ALJ did not include Dr. Geraldo Lima's restriction that Plaintiff would have difficulty recalling instructions. *See* [Tr.

521]. When asking a hypothetical question, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citations omitted). The ALJ specifically noted Dr. Lima's finding that Plaintiff was "able to understand simple instructions but has difficulty in recalling information." [Tr. 76]. In not including Dr. Lima's conclusion in her RFC finding, the ALJ stated that "the undersigned is persuaded that the foregoing limitations contain all inferences regarding the claimant's impairments and the degree of severity thereof that are raised by the objective medical evidence of record." [Tr. 77]. Thus, while the ALJ did not explicitly state that she found Dr. Lima's finding that Plaintiff had difficulty understanding simple instructions uncredible, from her discussion of Dr. Lima's report and her statement that she reviewed the record as a whole, the ALJ likely considered the statement and found it unsupported by the medical evidence. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Given the ALJ's specific references to the medical findings set forth in Dr. Guntharp's letter, it is highly unlikely that the ALJ did not consider and reject Dr. Guntharp's opinion that Black was disabled as a result of her extreme scoliosis.").

Furthermore, the ALJ explicitly found "the claimants concentration, persistence or pace, moderately limited." [Tr. 73]. This finding was based upon the report of the state agency psychological consultants. *Id.* The ALJ also relied on an examination from another state agency psychologist who found that "the claimant can understand and recall simple and some detailed work procedures and instructions." [Tr. 77; 538]. Therefore, the ALJ did not err in posing the hypothetical question to the vocational expert because she included all of the limitations that she found credible.

**V. Conclusion**

Accordingly, based on the foregoing, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [D.E. 10] be, and the same hereby is, **DENIED**;

(2) that Defendant's Motion for Summary Judgment [D.E. 11] be, and the same hereby is, **GRANTED**.

This the 6th day of November, 2013.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge